We'll hear argument next in Case 12-98, Delia v. E.M.A. Mr. Madry. Mr. Chief Justice, and may it please the Court, the Medicaid Act requires States to take reasonable measures to seek reimbursement from liable third parties, and that States require recipients to assign their rights to payment for medical care. The Act does not direct how a State must determine what portion of a recipient's third-party recovery is properly attributable to past medical expenses. North Carolina's procedure establishes that the recipient's third-party recovery is properly attributable to past medical expenses. Sotomayor. You know that ex-ante? Madry. Excuse me? Sotomayor. How could you ever know that ex-ante? I mean, without looking at the individual facts of a case, the 30 percent is going to be under-inclusive in some circumstances, over-inclusive in others. So how do you deal with our holding that you're not entitled to the over-inclusive portion? Justice Sotomayor, the answer to that depends on whether the State has to predict with certainty the amount. Life is never certain, and it's so I don't even go to that issue. I go just simply to the question, how can you ex-ante predict, particularly with a statute that wasn't based on any empirical data, that 30 percent normally is the right amount? You just pick it out of the air. You could pick 40, 50, 60. How do we draw the line? Your Honor, the statute doesn't predict. It defines. It tells the recipient how much out of a recovery they must allocate to satisfy the repayment obligation. If it were a prediction, that would make it a presumption, and you'd have to defend it as such. But here, the statute defines the portion that the State, as a condition of extending the Medicaid benefits, tells the recipient they must allocate. They must allocate? I mean, is the State saying you do not own that 30 percent of the recovery, so you never get a property right in it, so that there's never any problem about asserting a lien against it? I thought that's what's going on here. And I think that's sort of disguised by talking about allocation. I thought the State is saying as to 30 percent of the recovery, you have no property right in it. Is it not saying that? Am I wrong? Your Honor, the State is saying that as to the amount of Medicaid benefits provided, the State has a right of recovery. And it says that of any third-party recovery. Maybe you didn't hear my question. My question is, is the State saying that you have no property right in the 30 percent? The State has the right to recover that portion. Let me ask my question again. Is the State saying that you have no property right in the 30 percent? I think that can be answered yes or no. And, yes, Your Honor, the position would be there is no property right in that percentage that the State has conditioned the extension of benefits on. Now, how does it have a right to announce that in a FELA case or in a Jones Act case, where those injured parties, they have a property right in their protection, but the statute applies to that recovery as well? If those litigants are Medicaid recipients, it applies to them as a condition of having received the State Medicaid benefits. So they can deny a litigant a property right in that recovery? I don't know how you can go in and ask for something you don't know. I don't know how the plaintiff can go in and litigate a case if they don't have a property interest that they can then assign to someone else. I've never heard of such a thing, how they would have standing to sue on your behalf if they have no property interest in the recovery. Your Honor, I'm confused by the question. I was. How do you sue for something you have no property interest in? I don't know how you sue for something you don't have a property interest in, Your Honor. So go back to Justice Scalia's question. The 30, there has to be some interest in the 30 percent. By the plaintiff. The 30 percent attaches upon the recovery from a third party. The cause of action is for whatever sources of injury that individual would have. To the extent the recovery is for medical expenses previously paid for by Medicaid, that's what the State's interest. Could I just clarify one point? Does this rule preclude parties, as we said in Fulbright, from stipulating to a settlement at all? No, Your Honor. Your brief is not clear on that. They can still stipulate. It's only if after the stipulation it hasn't been allocated that you can recover? Your Honor, the stipulation must include the State as a party to it for it to be binding. So what you're basically now saying is that there can never be a stipulation? There could be an advance agreement, Your Honor. You're saying that the parties cannot enter into a stipulation? If the parties are private litigants, a plaintiff and a defendant in a medical malpractice action, their stipulation doesn't bind the State. All parties to this case agree that. It can bind the parties for other purposes, I assume. There are other purposes for which the distinction between pain and suffering and medical expenses might make a difference, right? What if the parties agree that it's 50-50? Would the State take 50 percent then, or is the State still limited to 30? Your Honor, the statutory percentage applies in that situation as well. The 33 percent cap would apply. Again, the State's interest is the amount of the Medicaid benefits it provided capped at 33 percent of the recovery. General, how did you come up with 33? Why 33? Why not 10 or 60 or 90? How did you come up with the number? The North Carolina General Assembly first enacted it as it relates to Medicaid in 1988. It reflects a legislative history in North Carolina going back to 1935 with a statutory lien applicable to medical providers in civil actions. It became specifically applicable to Medicaid scenario in the 1988 provision. But what if this case is tried to a verdict and there's a special verdict and the jury says that 10 percent was medical expenses? Would the statute override that? Your Honor, I believe the judge imposing judgment following that jury verdict would have to conform the verdict to the law, just as if the verdict had said there was a hundred — excuse me, a million dollars in punitive damages when there's a statutory cap of 500,000 for punitive damages. The judge would have to conform the verdict to the applicable law. What's the difference between that case and Albarn, where you have — where the State has agreed that a certain amount is attributable to medical expenses, and in this hypothetical, the jury has determined that a certain amount constitutes medical expenses? What's the difference between those two cases? In the jury verdict scenario, the State's not a party to that and didn't commit to the — to the portion that was attributable to medical expenses. The jury doesn't have any authority to countervene the statute to — to enter a verdict in violation of — of the statutory requirement. And here the statute tells the Medicaid recipient in advance how much of any recovery, whether that be from a settlement or a verdict, has to be allocated and paid back to the State. But isn't the reasoning of Albarn that when we know to a certainty how much the medical expenses were and what part of the judgment represents or the settlement represents medical expenses, then only that much can be assigned to the — to the government? And I don't see the difference between that and the verdict situation. The verdict situation would depend upon what would be in the hands of the parties to the lawsuit, what evidence was presented, what — what theories were advanced. The State would not have any control over that. It would be — Well, but it can — it can participate in that process, can't it? It's money that's at issue. The State can initiate a lawsuit on behalf of its — of its medical claim by virtue of the subrogation and the assignment of the rights. It could participate in advance or it could participate afterwards. But that doesn't come without costs, because, of course, if the State participates on its own in advance, it would be for the full amount of the medical payments. Here— I'm sorry. Here, 1.9 million, and the 33 percent cap would have no application. That applies only to amounts recovered by a recipient from a third party. General, you were telling me a little bit about the history of the statute, but why 30? Is there any indication of why the State picked 30? Your Honor, historically, 33 percent or three times the medicals was the rule of thumb used in tort actions, that parties used that as the methodology, the way to come up with a value to the case, with the theory being 33 percent for the medicals, 33 percent for attorney's fees, and 33 percent to the victim. That was the— If that's where it comes from, then it does relate to a kind of estimate, doesn't it? Historically, it does.  And I'm not going to go into the details of the statute as I reference the lien statutes that apply generally to tort actions, to civil recoveries, to protect the providers of medical services. In those cases, they date back to 1935. We use the— Can I ask you, somewhat technical, and I appreciate your paying attention, because it's hard for me to keep all this in my mind. All right. Now, as my understanding of North Carolina, everyone accepts the rule, and North Carolina agrees, that if you in North Carolina advance to the victim $50,000 in medical expenses, now, you want to — you're never going to get more than that back, and you don't want more than that back. Now, the victim and the tortfeasor enter into a settlement, and you have a rule, and the rule is, you will never get more than $50,000 or 33 percent, whichever is less. That's the rule, whichever is less. So if the settlement is for $100,000, you're not going to take more than 33, though you've advanced 50. Okay. So you have basically three situations. The first situation is where a judge has said, you know what, I find that only $10,000 of this settlement is for medical expenses. In that case, you take $10,000, no more. Is that right? No, Your Honor. Oh. Well, I got the impression that if there was a judicial — there are three situations. One is there's a judicial finding that only 10 percent was medical. And the second is the situation where they stipulate that only 10 percent is for medical. And the third situation is this situation, namely, there's no stipulation and there's no judicial finding. So my thought, which is wrong, I guess, is if the judge says it's 10 percent, you won't take more than 10 percent. That if, in fact, it's a stipulation of 10 percent, North Carolina courts have not yet decided that. And that this is a case where there is no stipulation and no judicial finding. Now, you're telling me I have that wrong, so you explain what the North Carolina is on that, because I think it makes quite a difference. Your Honor, the statute applies to settlements or judgments received by a Medicaid recipient from a third party for medical. I know. But in the settlement, they stipulate that 10 percent is for medical and the rest for pain and suffering. Now, I thought the North Carolina courts have not yet decided whether North Carolina, which would like more than 10 percent, can get it. Is that true or not true? That is not true, Your Honor. They have decided. The North Carolina Supreme Court in the Andrews case said that the key point in Allborn was the stipulation of all points. It has nothing to do with Allborn. Allborn, we all agree, says you cannot get more than medical, the medical expense. Okay? The question here is how to figure that. So I thought that one way to figure it, I'll just be repeating myself, one way to figure it is how much of this $100,000 settlement is attributable to medical expenses is a judge would say. Now, you are telling me there is a case in North Carolina which says if the judge himself says that 10 percent of the settlement is for medical, that's not what Calif That doesn't matter, according to North Carolina law, and I'd like the name of the case, the State case, that says that. Your Honor, I'm not aware of any such case. Okay. So we don't know the answer to that. We know what you would like, but we don't know the answer. Don't you think the statute may give you the answer? It says any attorney retained by the beneficiary shall, out of the proceeds obtained on behalf of the beneficiary, by settlement with, judgment against, or otherwise from a third party, by reason of injury or death, distribute to the department the amount of assistance paid by the department on behalf of the up to 33 percent. It applies to judgments as well as to settlements. You answered the question with respect to jury verdicts. I suppose it would be no different if it's the judge that found the 10 percent rather than the jury. I would agree, Justice Ginsburg, the statute of. Justice Ginsburg's question. The question that Justice Breyer was asking about the 10 percent has already been answered because we were told that if a jury allocated 10 percent to medicals, it would not make any difference. The statute entitles the State to 30 percent. Basically, you're saying the judge would be required to give you your one-third, regardless of what the jury said. Right. Exactly. As we said, he would either have to conform a jury verdict to the statute of tort. So all those States that have jury verdicts, special verdicts that require a certain amount, they could avoid that by just simply passing this law and avoid the anti-lien statute that way? Your Honor, it would depend how the State could rationally defend their statute under their experience as consistent with their jurisprudence. Of course, tort law being primarily the object of the statute. Sixteen States already have something close to a presumption of a percentage. Do you have any evidence that in those 16 States where it's only a presumption and not a fixed amount, that they're falling apart because of it? Your Honor, I don't have any evidence as to the specific performance in those 16 States. That would leave 34 States that don't have one. It also would raise the question of how many of those States, I believe the 16 States were the ones that had some sort of procedure, some post-settlement either hearing or trial, to allocate. In the absence of this statute, what did your State do beforehand? This statute dates back to 1988. Prior to 1988, I don't know how the 1965 effective date of Medicaid, how things were handled. But certainly, the last one. General, on your theory, am I correct that the North Carolina legislature could amend this statute tomorrow to make it two-thirds? Certainly, a statute could be amended, whether it could be defended under the circumstances. No, but that's what I mean. I mean, on your theory, it seems not to matter whether this statute says one-third or two-thirds. And I'm asking whether that's correct. Two-part answer, Your Honor. As to the anti-lien provision of the Medicaid Act, if the statute defines the amount of medicals as two-thirds, that would present the same analysis under the anti-lien provision of the Medicaid Act. The difference would be whether the State could show a rational basis in its tort law, in its jurisprudence. Well, I guess I'm not sure about that. In other words, I'm assuming an amendment that just all it does is it changes one-third to two-thirds. And so your theory, it seems to me, would work the exact same way. And then you say, well, you need a rational basis for doing that. But I thought you told me that the one-third really doesn't have anything to do with an estimate of how much is medical and how much is not medical. So it seems that you would have the same basis to say two-thirds as you do to say one-third. Am I wrong about that? I would say, Justice Kagan, the reason it's not the same is that it would treat Medicaid recipients decidedly differently than other tort litigants in North Carolina. Given the 1935 history of the allocation of tort settlements and the liens in favor of the providers of medical care that preexist the North Carolina Medicaid statute, if you then change the Medicaid statute. So you're saying there's a kind of side constraint that Medicaid recipients have to be treated like others. But then presumably the State could change everybody's. I believe that would be the case, yes. The question would be whether there was any disparate treatment, any singling out of a Medicaid recipient. And certainly we've demonstrated that under the North Carolina experience, that is not the case. I thought your brief said that at some point, if it gets too high, you do have a problem under the anti-lien provision of Medicaid. I believe, Your Honor, in response to the 90 percent or 100 percent scenario or hypothetical, I would certainly posit it would be difficult for a State to defend. Why? I don't understand that. You see, I think the only way you can defend it is that the recipient never had a property right. Once recovery is given to the recipient, the recovery does not belong to the recipient. And if that's true for 33 percent, it can be true for 100 percent. Has there ever been any litigation since 1935 about takings problems with the State requiring 33 percent to go to the medical provider, even though it may well be that less or more of that amount went to medical damages? Your Honor, under the general lien statutes in Chapter 44 of the North Carolina General Statutes, Sections 49 and 50 are the two provisions that we cite. I'm not aware of any takings-related challenges to those laws. I am aware of State and Supreme Court opinions saying that the attorney had to distribute proceeds in accordance with the statute. Breyer, can I go back for a second, because I want to show you where I got my perhaps mistaken idea from. There is a case called Andrews, and there is a statement in Andrews, which is a South North Carolina case, which says in certain circumstances, although the statute says just what Justice Scalia said, the lawyer sits there, he takes one-third and pays it to the State. Then this case has this sentence in it, Alhorn controls when there has been a prior determination or stipulation as to the medical expense portion of a plaintiff's settlement. In those cases, the State may not receive reimbursement in excess of the portion so designated. Now, having read that sentence, I thought the law of North Carolina was that this jury or the judge finds that only 10 percent was for medical expenses. The State cannot take more than 10 percent. And the same is true of a stipulation. That's what those words seem to say to me. Now, you're telling me I'm not reading those words correctly, that the case of Andrews does not affect our case here, and that you see that the law of North Carolina is that you get one-third. Now, what is it? Do you see why I'm confused? Yes, Your Honor. I'll try if I can to explain what I believe to be the source of the confusion is. The stipulation in Alhorn referenced in the Andrews decision was between the Medicaid recipient and the State of Arkansas, the lien holder. It came in the Federal court action to challenge Arkansas's imposition of its claim. Therefore, there was a stipulation binding the State, the lien holder, that controlled an alibi. Breyer, they say a prior determination or stipulation. I took prior determination to mean a determination by a judge or a jury. What does it mean if it doesn't mean that? I think later in the Andrews decision, you'll see a reference to the parties certainly have the opportunity to negotiate with the State a lesser amount than the amount of the statutory lien. That would be the prior determination, I believe. Am I correct that what you believe and what the courts have been doing in your State, the lower courts, is that they won't approve a settlement that doesn't have the one-third and they won't enter a judgment that doesn't have the one-third? Is that correct? Your Honor, when there's a lump sum settlement in these actions, the court directs the attorney for the recipient to enforce the statute to protect the statute. So I'm right. They just won't accept the private stipulation that doesn't do that and they won't enter a judgment that doesn't do that, correct? Here, the State court ordered the $933,000. Just answer my question. Yes, Your Honor. All right. Going back to Justice Alito's, the jury says it's less or more or whatever of the settlement is medical expenses. It doesn't matter what they say. The court can't enter a judgment for that amount. They have to enter a judgment for either the one-third or the full medical expenses. They have to enter a judgment. Yes, Your Honor. And that's what they've been doing. Yes, Your Honor. And that is the rationale behind the statute, that the jury nor the judge can enter a judgment that's not in conformity with the statute. Could I ask you how often this comes up in North Carolina? Do you have any figures where you have a dispute of this nature during the course of the year? Your Honor, I've tried in the briefs to indicate the dollar amounts involved. The numbers of cases are in the hundreds, it's my understanding, because typically they involve third-party payments not just from medical malpractice cases, but insurance coverage and other situations that trigger the repayment obligation. I don't want to take up too much time talking about Andrews, but it seems to me that what the North Carolina Supreme Court said in Andrews is that in those States where there's a prior determination that controls, but that North Carolina is entitled to adopt a different procedure and have a one-third across-the-board rule. That's the way I read it. Well, certainly that is. Does that accord with your understanding? Your Honor, I think they were saying two things, that other States have different procedures and that in North Carolina this is the rule and that the prior determination also could include an action involving binding the State of North Carolina. I know that was argued before, but I read Auburn very carefully and I don't see it. I read the amici briefs that referenced different procedures and not one of them referenced a North Carolina procedure. So I know that was argued before. You don't argue it in your brief here, and I assumed you didn't because you did what I did, which is to read Auburn carefully and read what it cited, and I don't see it cited. I don't see the North Carolina procedure referenced in Auburn. I don't see it referenced in Auburn as something that States could do. It wasn't referenced directly in the opinion and it wasn't referenced indirectly by the amici. The amici were talking about substantially different procedures. Your Honor, the holding in Auburn said you can't go beyond the amount represented that represents repayment for medicals. It didn't say how a State has to or could determine that, and that's the question. Sotomayor, but my point is, Justice Kennedy's question was that somehow, in that opinion, we approve the North Carolina system. Your Honor, I think that's absolutely not true. Is there a direct reference to North Carolina system in that or in any of the amici brief that talked about different State rules? Not that I'm aware of. If there are no further questions, Your Honor, I would like to reserve the remainder of my time for rebuttal. Thank you, counsel. Mr. Browning. Mr. Chief Justice, and may it please the Court, General Madry has steadfastly argued that the North Carolina statute overrides a jury verdict. I think his argument is well grounded, given the language of the statute, but that it's one-third of a settlement or judgment, regardless of the true facts of the case. And that is problematic under Albarn. Justice Kagan, you had asked Mr. General Madry about the basis for the North Carolina statute. General Madry had referred to it being a rule of thumb of three times medicals. But if you actually turn to the Fourth Circuit's decision, which is based on the briefs that were filed in the Fourth Circuit, in the petition at page 20A, the rule of thumb is actually three times specials, which, of course, is different than three times medicals, because special damages would include things like lost wages and various other things. Kagan. Mr. Browning, let me give you a different rationale for this statute. It's different from the one the State suggests, but it would go something like this. There's an allocation that has to be made. In making allocations, there are two ways of doing it. We can do it case by case, individualized decisionmaking, or we can use some bright line rules. And the advantage of bright line rules is that they're cheap and efficient, and sometimes they're not more inaccurate than individualized decisionmaking, because in individualized decisionmaking you can make errors, too. So this is a reasonable way to make an allocation decision. And nothing that we said in Auburn suggests that a State needs to use case-by-case decisionmaking rather than bright line rules to make the allocation that it needs to make between medical and nonmedical damages. What about that? Browning, Your Honor, I would turn to the language of the Auburn decision, which makes clear that State cannot lay claim to more than a portion of a settlement or judgment that represents payment for medical care or medical expenses. When you have to take a case, you have to make a decision. Scalia, that doesn't answer the question. I mean, that portion, according to North Carolina, is one-third. It is the State saying it is one-third, even though there's no basis, and even though you have cases like this where it's clearly not one-third. And even though the State says is the law. I mean, the State says one-third is for medical. Browning, Your Honor, if that is all North Carolina had to do, of course, the Auburn decision would have been dramatically different if Arkansas had simply enacted a cap of 100 percent or 50 percent or 40 percent, because in the Auburn decision, the State of Arkansas was only seeking to recover 39 percent of the tort settlement. And under North Carolina's theory, if Arkansas had simply been bright enough to implement a cap, the Auburn decision would have been completely different. And that makes absolutely no sense. I think the Auburn decision indicates that there has to be a process in order to fairly and appropriately determine the amount that the State may pay. Scalia, so you need an — ultimately, you need an adjudication. You have to leave it either to a jury to decide what percentage of the total award is medical expenses, or have a separate proceeding, let's say, where there's been a settlement. You need a separate proceeding to decide how much of it is really for medical. You know, they may say 10 percent is, but who believes that? You need a proceeding. That is awfully time-consuming. And as Justice Kagan suggests, I'm not sure it's going to be very accurate. I don't think a jury determination is going to be accurate on that score. And I don't know how you go about determining how much of a settlement is attributable to medical expenses versus other things, especially when the settlement itself says only 10 percent is medical expenses. Well, Justice Scalia, I think it is very easy for States to follow that and to put in practices or procedures that result in appropriate allocation of medical expenses. How do you do that? Yes. There are a variety of ways that States can do it. Obviously, if the States do it. Sixteen are doing it already. Absolutely. Sixteen and the District of Columbia have a process for appropriate adjudication. Moreover, it is perfectly appropriate if a State wants to have a presumption. The problem is it can't be an irrebuttable presumption. How does it work? Because I would imagine at the negotiation you have the victim's lawyer and the tort feasor's lawyer. And the tort feasor's lawyer is interested that the bottom line number be as low as  And the victim's lawyer, in fact, would like as little as possible to be allocated to a source which is going to take that money away from him. So they can reach agreement. What they will do is say one penny is for medical expenses and everything else is for pain and suffering. And that's very good for the victim. And it's irrelevant to the tort feasor. And so when you see that on a piece of paper, and what is it you are going to do, what kind of proceeding are you going to have, and it's a proceeding about a proceeding. It's a proceeding about the settlement negotiation. What's it going to look like? What does it look like in these 16 States? We will have a plaintiff's lawyer testify. He will say, Your Honor, I really wanted one penny and only one penny to be allocated to pain and suffering, to a medical expense. And the defendant's lawyer, he is being very honest, he will say, I didn't care if that's what he wants, fine with me. You know, that's what happens. He does care because a smaller amount means that the victim is going to actually get to keep more. And that's all that the victim's lawyer is concerned about. And that's fine with the tort feasor's lawyer because otherwise he has to pay more. Exactly. So what does it look like? Sorry to interrupt. Mr. Chief Justice, if I first can turn to your point and then respond to Justice Proctor's point. It's the same point. It's the same point. Well, let me say this at the outset, that first of all, it is our position that the state of their interest, there has to be an appropriate adjudication. It's worked well in the states that have implemented this process. How does it work in those states? Yes, Your Honor. And, Justice Breyer, I don't think it's all of that complicated. I don't understand. What do you adjudicate? What is the issue in the adjudication? How much of the award should have been allocated to medical expenses? Or how much of the award was, in fact, allocated to medical expenses? Which is the issue? What should be adjudicated? It seems to me it should be the latter, shouldn't it? What should be adjudicated, consistent with the Allburn decision, is the portion of the settlement that represents payment of medical care. That's right. And that is what was allocated, right? It doesn't matter what ought to have been. The issue is what proportion did the parties, in fact, allocate to medical expenses, right? Your Honor, I don't think. And they say what do they mean? How are you going to contradict that? We would not assert that the parties' subjective belief is necessarily binding. No, no, but that's the same question. There are 16 States that have this procedure. How does it work? Yes. And in most of those states. I don't want to know that they have it. I want to know how it works. We put the problem as to why it seems it might not work too well. And now I would like you to tell us how it really works. How it really works in those States is the States will generally negotiate with the State Medicaid agency and come to a fair allocation without the necessity for a judicial determination that's appropriate. Now, I don't know. Sotomayor, does that mean because they know they are going to be subject to a hearing if they don't reach an agreement? Yes. So there's an inducement for them to do what this State didn't do. Correct, Your Honor. I'm told to come in, they ignored it. In those States, States know they are going to increase potentially their costs, so they come in more often. Exactly, Justice Sotomayor. Exactly what? It levels the playing field so that there is an incentive on both sides to come to an appropriate allocation. This is what I envision happening. I was going to say, how do we know what's fair and appropriate? You come in, let's say you have $20,000 in medical expenses and a claim for pain and suffering, and they come in, they recover a million dollars, right? So what's appropriate in that case? The other side will say, well, we settled on a million dollars, pain and suffering was really $20 million, and we came down to a million, so what's fair allocation in the case of medical expenses? It seems to be an entirely artificial judgment. To the extent it's not, it depends upon the views of the two parties negotiating, and I thought we established that that's entirely subject to manipulation. Your Honor, it is a process that the courts can determine based upon the experience of the judge, who generally would be very experienced in the valuation of cases, can make an appropriate decision and can consider all the facts. The equities do this in non-Medicaid cases regularly. Oh, absolutely. They do it in North Carolina in the context of workers' compensation liens, having to come up with an appropriate allocation, and there the court has to deal with what appears to be many of my colleagues' gut instinct, okay? This costs too much, it's too burdensome, you've already answered why not. But in the end, they don't believe you could ever figure out the number. That's really their bottom line, that this number is artificial no matter what you do, so you might as well just throw a label on it, reasonable or not, and leave it alone. How do you answer that argument? Because that's the essence of their belief. Your Honor. That this bottom line allocation is always going to be wrong. It's a little better than that, but go ahead and answer. Justice Sotomayor, the concern, of course, is that — forgive me, I've lost my train of thought here, Chief Justice. Well, this is what I envision happening. If the parties can't come — if the State and the recipient of Medicaid assistance can't come to an agreement, basically you have to make an estimate of what the damages would have been if the case had been tried, and then you determine that the medical portion of the damages would have been 15 percent, and so you reduce, then you take the amount of the settlement, and the amount of the settlement that is attributable to the medical expenses is 15 percent. That would be what I would envision. Is that not correct? Your Honor, that is certainly approached similar to Auburn, a proportionality sort of review. You look at how much you're able to recover versus the amount — the amount of the total claim versus the amount of the settlement, and you come to an appropriate— That seems very — that seems really very complicated. How can a judge — where the case is settled and the judge doesn't really know anything about the proof, how is a judge going to be in a position, really, to do that? Your Honor, it is a matter of the parties coming forward, presenting evidence as to the damages in the case, perhaps an explanation as to why the case settled for less than full value, and the court using their experience to determine, is this appropriate, should there be any reductions, and of course— Is that what happens? You said that in North Carolina for workers' compensation, for settlements that are subject to workers' compensation liens, you have this kind of system. Yes. So how does it work for workers' compensation recoveries that have the same thing? They owe the State for the medical. Yes, Your Honor. The statute, the North Carolina statute, directs in that lien situation for the court to consider the likelihood that the plaintiff would have actually recovered on the appropriate, and it puts it in the discretion of the court. What we're saying here is that Auburn requires that there must be a determination of the portion of the settlement that represents payment. Counsel, in those proceedings, are witnesses called, or is it usually done on papers? It's usually done in a fairly expedited process. Yes, Your Honor. You know, putting it in the discretion of the court, as you say is done in the workers' compensation, is quite different from what you're proposing here. That seems to me quite workable, you know. The court hears the evidence, and it decides how much should be reimbursed within the court's discretion. But here you're asking a court to decide how much of a recovery or how much of a settlement was attributable to the medical portion. I think it needs to be — That's a totally different question. Justice Scalia, I think it's an objective determination. I don't think the parties can skew it one way because of the way they structure the settlement, just because — just as the State can't skew it the other way because they have an arbitrary number, whether it be 100 percent, 90 percent, 75 percent, that doesn't allow for the fact that you're satisfied. Are you satisfied? You've said several times that the way you do this is based on the judge's experience and so on with the cases. And I think what your friend on the other side is saying is that's pretty much what's going on here, except over time — I mean, would it be all right if over time the judge says, well, typically sometimes it's 25 percent, sometimes it's 35 percent. Over time it's sort of 33 percent. And so we're going to have that as an absolute rule so that we don't have to go through these proceedings every time just to make sure that it's 30 percent rather than 33 percent. I guess it's Justice Kagan's question. What's wrong with the right-line rule here? Yes. There would be nothing wrong with a rule that creates a presumption. What is the problem is you have cases that are on the extremes, like this case, where you have absolutely horrendous injuries and a physician who doesn't have the financial wherewithal to pay for the extent of the damages that he caused. Here, EMA's guardian had no option but to settle the case for the available funds of $2.8 million. But that is a far cry from how anyone would objectively value the case. So you're satisfied with the presumption. Is there any law here that gives you a leg up? I mean, is this like Chevron or Skidmore or something like that? Your Honor, I certainly think in this case the fact that the United States Department of Health and Human Services has filed an amicus brief that points out that this sort of ill-rebuttable presumption, this sort of law. And I know that's their position. But my question is, does the law mean that when we decide this case, I see you have a reasonable point, they have a reasonable point, that if both points are reasonable, you get the benefit of some kind of legal presumption like Chevron, Skidmore, et cetera? Maybe you can think of another one. I don't know. Do you or don't you? Your Honor, I think it would be appropriate to give Chevron deference to the arguments of the United States. Well, we're dealing with the North Carolina statute. Don't they get deference along the same lines? No, Your Honor. I don't think the starting point has to be the Federal statute, Medicaid's anti-lien provision, which is very clear that no lien may be imposed. Well, it can't be very clear because CMS took the opposite position before this case, right? I don't think that they took the opposite position with regard to the letter that was sent to Congressman Coble, that that was an employee who was not within a policy making decision, who has to field thousands of these sort of requests for information coming in to CMS. So I don't think we can put a whole lot of credence on that particular letter that has been expressly disavowed by the Secretary and the Director of CMS. Could I ask you a question on this different point? Could the — suppose the North Carolina legislature passed a statute that says something like the following. In any tort action in which an item of damage is sought is medical expenses, the plaintiff may not recover for any other item of damages until the full amount of the medical expenses is satisfied. Now, there they're just restructuring their tort law. Would there be a problem with that? Your Honor, I think in the case of the anti-lien provision, that that would effectively circumvent the anti-lien provision and allow by the back door what we would contend would not be — the State could not do directly. So, yes, I do see potential problems with that. Obviously, it would be different than the scenario that we have here. But it does — the starting point has to be the anti-lien provision, which is no lien may be imposed. This Court in Auburn assumed without deciding that there would be an implied exception to that statute. But that — that exception is very limited. It has to be in the context of, as this Court recognized, a State can only lay claim to that portion of the settlement that represents payment for medical care. So until you have— Did Federal law require your client to seek compensation for medical expenses? No, Your Honor. I don't believe that there is a requirement that Medicaid beneficiaries would have to file a suit and try to recover medical expenses. So you could have — could you have filed suit and disclaimed any claim for medical expenses? You only want to be compensated for other things. If — first of all, there would be some medical expenses that wouldn't be Medicaid — medical expenses that were incurred by the family. But, moreover, even in that scenario, I think given the language of the North Carolina statute, the State would still be seeking one-third. So if one were to take that route, it would be an extremely treacherous route that you would be not being able to get full — full recovery from the defendant, but still having to be paying a third to the State of North Carolina. Yeah, but it would be the defendant who's — who's jiggering the system. I mean, not suing for the medical portion simply because the defendant knows that at least some of that portion, if not all of it, would — would go — would go to the State. So in a situation such as yours where the total recovery is — is not going to suffice to cover both pain and suffering and medical expenses, it would be very intelligent to do what Justice Alito proposed. And that seems to me a real, I don't know, gaming — gaming of the system. I don't think it would be a gaming of the system, Justice Scalia. The State, based upon the statute, based upon its previous directives, would expect the Medicaid beneficiary to seek recovery of those claims and to remit one-third to the State. Thank you, Your Honor. Thank you, counsel. Ms. Anders. Mr. Chief Justice, and may it please the Court, to start with the types of procedures that States may use to allocate medical damages, I think the States have a broad range of discretion to determine what should be an appropriate allocation. They're not determining — Can you move the microphone so it will be closer to you? Sorry. Thank you. I'm for don't adjust it. Is this better? Yeah. Thanks. So the States are not determining — they're not trying to reconstruct what the plaintiff's and the defendant's intent was in entering into the settlement. Often there will be no shared intent. What the States are doing is determining what the appropriate allocation should be. And the States that have individualized determinations, which is what we think is required here, have developed a number of different procedures for doing that. For instance, district court in Pennsylvania in McKinney v.— Excuse me. I have a theoretical problem right at the outset. I mean, what the statute forbids is asserting a lien on recovery that is for medical expenses. And you're telling me that the States aren't even trying to find out what portion of the recovery was for medical expenses. They're looking to determine what proportion should have been for medical expenses. How does that tie in with the prohibition of the lien? Well, I think this Court established in Allborn that the beneficiary and the State, they respectively have interests in the settlement that arises from the fact that in the tort case the plaintiff has asserted claims for medical damages and for nonmedical damages. And so Allborn establishes that we need to divide the two in order to determine what the State may recover. Allborn also establishes that the beneficiary has an interest in the settlement that arises from her nonmedical claims that can be allocated away by an allocation method such as one that gives, that says that 100 percent of the settlement must always be allocated to medical damages. So you're saying that the State can, in making this determination, in fact take away from a plaintiff who has recovered a greater amount in medical expenses or a lesser amount in medical expenses, can take away that by determining how much should have been allocated to medical expenses, right? The State does have some discretion to determine what the appropriate So you're messing up the lien law anyway, no matter which way you play it. Well, I think Allborn establishes that we have to make some kind of division of the settlement. And when the parties haven't done it, there's no jury determination. We don't know ahead of time, before the allocation has been done, what precisely the amount of medical damages should be. But we do know, because the plaintiff, the beneficiary, has asserted nonmedical claims and she has compromised them, we do know that she has an interest in the settlement that arises from her nonmedical claims. So, for instance, you can imagine a situation in which a plaintiff has a claim that is 10 percent medical damages and 90 percent past loss wages. So they're both equally concrete. In that situation, when the plaintiff settles for pennies on the dollar, I think we would have serious questions about whether a one-third allocation to medical damages in that case would be appropriate. But without an individualized determination, there would be no way to know whether this is a case in which the blanket rule that the State has is actually overestimating the amount that should be appropriately allocated to medical damages. Sotomayor, could you please finish your response when you said various States do various things? Could you describe some of them? Certainly. So, for instance, in McKinney v. Philadelphia Housing Authority, this is a district court case in Pennsylvania, what the court did was it said, we have the settlement, we know how much the past medical damages were because we know what the medical bills were, and we can assume that the jury, had this case gone to trial, would have awarded 100 percent of the medical damages because they were provable and because there weren't disputes about that. And so the court then said, I'm going to then apply a discount rate for the uncertainty that the defendant would have been held liable at all. Is that a reasonable – this is the Federal district court? That was the Federal district court. So it's not a State procedure? The Pennsylvania law, that case happened to be in Federal court. Pennsylvania law provided a rebuttable presumption, and so the court determined that. What if the other parties, I guess, come in and say, well, that's not how juries work, they don't care that this measure of damages is particularly calculable, they come to a general view. You've got medical expenses, you've got pain and suffering, they make a judgment about that. Would that be a good argument to make? I think the court could take that into account in allocating, yes. So some. Roberts, So how would it take it into account? You said, well, because the medical expenses are readily calculable, we assume that that's what the jury meant first and then the other stuff is extra, so the State can get it. But maybe sometimes they just come to a total figure and they don't care how it's allocated. You say, well, that's an argument they can make. Well, what's a judge supposed to do in a particular case? Well, I – we're – this is positing a situation in which there's been a settlement rather than a jury determination. So I think that the court that's doing the allocating has some discretion here. And so one thing it can do is say I'm going to essentially prioritize medical damages because I think juries usually will award them, but a State could also provide that the inquiry should be more equitable and open-ended. So, for instance, Illinois and Missouri have provided simply that the court should make an equitable allocation. It can take into account the fact that the plaintiff may receive a double recovery, and the allocations are low. Ginsburg Do you agree, do you agree that the only flaw in the North Carolina statute is that it's a fixed amount, but if it were a rebuttable presumption it would be okay if the North Carolina law said 30 percent is the cap, but in a particular case you can show that that's not a fair allocation? That's absolutely right, and to return to one of Justice Kagan's earlier questions, I think a one-third allocation may be, in the mine run of cases, a reasonable presumption, but there will be some cases, like my 90 percent, 10 percent example, where it isn't a reasonable allocation. And those rebuttable presumption states can both sides come in and try to rebut it? So the individual beneficiary can try to rebut it, but the State could as well, or is it just a right for the beneficiary to try to rebut the presumption? I think in those States it's just a right for the beneficiary to try to rebut the presumption. Some of those States start with a rebuttable presumption of full reimbursement, so that the presumption starts at the full amount that the State paid. So this is a real significant increase in the burden on the State in the Medicaid program. You're saying, yes, you can try to recover, recovery from third-party tort feasors. But if you do that, you've got to set up this apparatus where everybody can come in and you've got to prove what the allocation was and all that. So, I mean, some, as 34 States haven't done that, right? Well, I think what's more significant for our purposes is that 16 States plus D.C. have, and what they've found out is that. Well, yes, for your purposes, but I'm interested in my purposes, and I'm trying to figure out whether or not that's a significant financial burden on the State if they're going to go about trying to recover this money, that they've got to provide some apparatus, administrative, judicial, whatever, to make a calculation that I still don't understand what it's addressed to. And not only that, but even if you do know what it's addressed to, you just take into account all these things and come up with an equitable. I don't think that these States have found that it's a significant administrative burden. One reason is that once the allocation rules are in place, it's our understanding that most of these cases settle. The beneficiary and the State agree as to what the allocation is, so this doesn't go to a hearing in the first place. But even when there are hearings, I think States can take significant measures to lessen the burden. Sotomayor, how many States have North Carolina's rule, do you know? There are five other States, like North Carolina, that have an irrebuttable presumption with a cap. There are ten others that have an irrebuttable presumption. We think of full reimbursement, but I should caveat that by saying that we simply don't know in those States what they do, what their practices are. Breyer, why isn't the missing part here, maybe I just missed it, but we are interpreting a statute and the part that trumps the Lien provision is the part that says the State is entitled to payment that has been made for medical assistance for health care items and some other similar languages in the statute. They think their one-third rule is a good way of measuring that. You think that the one-third rule as a rebuttable presumption is a better way of measuring that. Now, normally or often I would see government arguments like that where they would say, and by the way, we are interpreting very technical language in our statute and Chevron and or Skidmore means that you should give us particular weight. Is that part of your argument here? And if it isn't, why isn't it? Well, we think that the position reflected in our brief is HHS is considered position and we do think that it is persuasive. Now, HHS presumably could regulate, it could, you know, go through notice and common rulemaking and a set of rules. Breyer, my impression is that you get Chevron deference on the basis of whether Congress, and there are a lot of rules and so forth, but, but. We haven't claimed Chevron deference. You haven't claimed it. And I, so that puzzled me and I don't, I'm not saying, you argue what you want to argue, but I, this is awfully technical language, it's a minor interstitial point. I'm not sure that HHS has, has authority over, over, over how a State recovers. Maybe that's it. I don't see that it's part of the administration of the statute committed to HHS. So I, you know, I, I admire you're not citing Chevron. Well, HHS has, the statute requires the States to enact reasonable measures for recovery. HHS thinks that a measure that circumvents the anti-lien provision like North Carolina's wouldn't be a reasonable measure, but there aren't regulations on that subject. Thank you, counsel. General Maddrey, you have three minutes remaining. We've heard a lot about what a State could or maybe should do, but what must a State do under the Medicaid Act to fulfill its obligations? The Fourth Circuit and Respondents and apparently the United States say they have to have a post-settlement trial, I guess a trial to settle the settlement. And that, while an available option, is not a mandatory requirement under anything that I can see in the Medicaid Act. Well, General, how about this? I mean, I'm having a little bit of trouble here because I think a State could come in, or I think there's a reasonable argument that a State could come in and say, you know, we've made an estimate, and here's our best estimate, and we don't think that there's a need for individualized decision-making on top of that. But as I understand your argument, that is not what you are saying. You are making a very different kind of argument, suggesting that you can peg this allocation of cases, allocation of medical and nonmedical damages in the real world. So if that's the case, what do I do? Your Honor, the statute, North Carolina statute, defines the amount that must be included for the repayment by the Medicaid recipient. It's not guessing after the fact, but instead providing in advance the recipe as to how to put the settlement together. It tells the parties what they have to do. And that makes it a bright-line rule, which I think you need to compare to the alternative, which is this — this — what the Fourth Circuit called a true value hearing. After the fact, after the settlement, how did — how did they get there? Is it what they did or what they should have done or what they could have done? In this case, you've got a $42 million damage claim settled for $2.8 million. Sotomayor, so how do — what do we do with the Federal statute that says you're not entitled to a lien of any amount that's greater than your medical expenses? And using the Solicitor General's office example, everybody knows that the true value of medical expenses in a particular case was only 10 percent. You're still getting 30 percent. How do we — how do we honor the terms of the Federal statute? Because the State statute says the State never recovers more than its actual medical expenses. If in that hypothetical the medical expenses were 100,000 or 10 percent, the North Carolina statute would say North Carolina gets up to one-third of the settlement, but never more than they paid. So by definition, it can't be for something that was not medicals. And that's the bright-line rule that the North Carolina statute creates. Thank you, counsel. The case is submitted.